# AGREEMENT

## between

## DENISE PRAGANO, JOHN RIKER, AND JOHN VASQUEZ

## and

## PATRICIA WILSON-COKER, Commissioner Connecticut Department of Social Services, in her official capacity

Agreement is made between Denise Pragano, John Riker, and John Vasquez individually (hereinafter "the plaintiffs") and Patricia Wilson-Coker, Commissioner Connecticut Department of Social Services (hereinafter "the defendant") as follows:

WHEREAS, the plaintiffs are residents of the State of Connecticut;

WHEREAS, the plaintiffs are all Medicaid beneficiaries;

WHEREAS, the plaintiffs have filed a lawsuit against the defendant claiming that she had failed to meet her legal responsibilities to the plaintiffs pursuant to federal medicaid and Constitutional laws, which case is pending in the United District Court, District of Connecticut, with the Docket No. 3 02CV01968 (CFD);

WHEREAS, the parties are desirous of resolving their claims without the necessity of further court action;

NOW, THEREFORE, in consideration of the mutual promises and forbearances of the parties as set forth herein the parties agree as follows:

1. The defendant has paid for the items of durable medical equipment requested by the plaintiffs. Ms. Pragano acknowledges that she has received her Tri Cell Low Air Mattress, Mr. Riker acknowledges that he has received a Bruno Electra-Ride III stair glide lift, and Mr. Vazquez acknowledges receipt of the Nemo Environmental Control Unit.

2. The defendant agrees to revise its Bulletin, PB 2002-65, to all Medicaid Providers titled "The Definition of and the Determination of Medical Necessity for Durable Medical Equipment (DME)" issued in December 2002. Exhibit A.

3. The defendant agrees to issue its revised bulletin to all Medicaid Providers within 14 days of the signing of this agreement. Revised bulletin is attached as Exhibit B.

4. The defendant agrees to revise its Notice of Action for all durable medical equipment requests. The defendant will begin issuing these revised Notice of Actions within seven days of signing of this agreement. Said Notice of Actions are attached as Exhibits C to T.

5. The defendant agrees to pay plaintiffs the sum of Fourteen Thousand and Five Hundred ($14,500.00) as full payment for costs and attorneys' fees incurred with bringing this lawsuit. This payment will be made within 30 days of the signing of this agreement and made payable to Connecticut Legal Services.

6. The plaintiffs will seek a voluntary dismissal with prejudice pursuant to F.R.C.P. 41 of their lawsuit which is pending in the United States District Court, District of Connecticut, with the Docket No. 3 02CV01968 (CFD). The Stipulation of Dismissal will be filed within 72 hours after the defendant has issued its new revised bulletin, its modified Notice of Actions, and has tendered payment for plaintiffs' costs and attorney fees as set forth in paragraphs 2, 3, 4, and 5.

7. This Agreement represents the complete understanding between the parties and no other promises or agreements shall be binding unless set forth in writing and signed by the parties.

8. The validity, effect, and operations of this Agreement shall be determined by the laws of the State of Connecticut. The Agreement shall be interpreted in accordance with the plain meaning of its terms and not strictly for or against any of the parties hereto.

9. This Agreement shall not be deemed to be a concession or admission by the parties of any lack of merit of their claims, nor shall this Agreement be deemed as an admission of any wrongdoing by any of the parties.

ON BEHALF OF THE PLAINTIFFS

DATED: 11-20-03

*Sheldon V. Toubman by KJB*

SHELDON V. TOUBMAN
Fed. Bar No. CT08533
New Haven Legal
  Assistance Association, Inc.
426 State Street
New Haven, CT 06510
(203) 946-4811

*Kevin J Brophy*

KEVIN BROPHY
Fed. Bar No. CT 11575
Connecticut Legal Services, Inc.
85 Central Ave.
Waterbury, CT 06702
(203) 756-8074

ON BEHALF OF THE DEFENDANT

THOMAS RING
Assistant Attorney General
Fed. Bar No. CT 08293
55 Elm St.
P.O. Box 120
Hartford, CT 06141-0120
(860) 808-5210

TANYA FELICIANO
Assistant Attorney General
Fed. Bar No. CT 14996
55 Elm St.
P.O. Box 120
Hartford, CT 06141-0120
(860) 808-5210

Exhibit A



**Connecticut Department of Social Services
Medical Assistance Program
Provider Bulletin**

PB 2002-65

December 2002

TO:        All Medicaid Providers
SUBJECT:   The Definition of and the Determination of Medical Necessity for Durable Medical Equipment (DME)

It has come to the Department's attention that there may be a need for clarification about the process that the Department uses to make benefit coverage determinations for Durable Medical Equipment (DME), particularly in light of the 1999 settlement agreement in <u>DeSario v. Thomas.</u> In this settlement, the Department agreed to provide individual consideration for items not listed on the Department's fee schedule and put forth this policy in §17b-262-672 through 17b-262-682 of the Regulations of Connecticut State Agencies, "Requirements for Payment of Durable Medical Equipment". This bulletin clarifies the process that the Department employs in making decisions on coverage pursuant to these regulations.

Requests for individual consideration must: 1) meet the definition of DME, and 2) be medically necessary and medically appropriate. For prior authorization requests for items already on the Department's fee schedule, only medical necessity/medical appropriateness is at issue

### Definition

The first step in the process is to determine whether the item in question meets all of the criteria in the definition of DME as adopted in § 17b-262-673, of the Regulations of Connecticut State Agencies. These state that the item in question must:

1. Withstand repeated use;
2. Be primarily and customarily used to serve a medical purpose;
3. Be generally not useful to a person in the absence of illness or injury; and
4. Be non-disposable

The definition adopted by the Department is identical to that employed by the federal Centers for Medicare and Medicaid Services (CMS) in the administration of the Medicare program. CMS has further elaborated on this definition as it applies to specific items in the DMERC manual

EDS

(Durable Medical Equipment Regional Carrier manual-Region A). This manual is updated on a regular basis and is universally recognized as a health care industry standard as an aid for the identification of the clinical uses of DME.

While the Utilization Review (UR) staff at DSS does consult the DMERC manual, it is not the only tool that they employ in considering whether a requested item does, in fact, meet the definition of DME. If the item does not appear on the Department's fee schedule and it also is not listed in the DMERC manual, staff may look to other sources of information concerning the requested item. For example, they may request additional documentation from the prescribing practitioner, or they may consult with physicians at the University of Connecticut Health Center under the terms of a Memorandum of Understanding. Under this agreement, the Department may access faculty in the full range of medical specialties to assist in the determination of medical benefits. The staff must then arrive at their own conclusion as to whether the requested item meets the criteria specified in the regulation in order to be considered DME.

## Medically Necessary/Medically Appropriate

If an item has been determined to meet the definition for DME, the second question is whether that particular item is medically necessary and medically appropriate for a particular Medicaid recipient. In making these decisions, the Utilization Review staff at DSS must evaluate the request for a particular item in light of the Department's definitions of medical necessity and medically appropriate.

In Section 17b-262-673 of the regulations of Connecticut State Agencies, the Department defines "medical necessity" as:

> "Health care provided to correct or diminish the adverse effects of a medical condition or mental illness; to assist an individual in attaining or maintaining an optimal level of health, to diagnose a condition or prevent a medical condition from occurring."

In the same section, the Department defines "medically appropriate" as:

> "Health care that is provided in a timely manner and meets professionally recognized standards of acceptable medical care; is delivered in the appropriate medical setting; and is the least costly of multiple, equally-effective alternative treatments or diagnostic modalities."

The definitions of "medical necessity" and "medically appropriate" must be applied to each individual once it has been determined that the item requested meets the definition of DME. An item could qualify as DME but it may or may not be medically necessary for a given individual. It may be medically necessary for that individual, but it may or may not be medically appropriate depending on whether the UR staff determine, among other things, that the item is "the least costly of multiple, equally-effective alternative treatments or diagnostic modalities."

While the DMERC Manual provides broad guidance for which items meet the definition of DME and when such items can be determined to be medically necessary and/or medically appropriate

for an individual client, it is never the sole basis for denial of a request for coverage. It is a reference point, but it is just that. Additional documentation is received, as described above, and the ultimate determination is based on the criteria specified in the Department's regulations, §17b-262-672 through 17b-262-682.

I hope that this bulletin has provided some clarification about the range of activities that we are engaged in to assure that every request for DME receives a comprehensive review for our clients. If you have any questions, please email your questions to Linda Mead at linda.mead@po.state.ct.us or Evelyn Sebastian at evelyn.sebastian@po.state.ct.us

David Parrella, Director
Medical Care Administration

---

This bulletin and other program information can be found at **www.ctmedicalprogram.com**.
Questions regarding this bulletin may be directed to the EDS Provider Assistance Center - Monday through Friday from 8:30 a.m. to 5:00 p.m. at:
In-state toll free ........................... **800-842-8440** or       EDS
Out-of-state or in the                                              PO Box 2991
local New Britain, CT area ....... **860-832-9259**                 Hartford, CT 06104

*EDS*

*Exhibit B*



**Connecticut Department of Social Services**
**Medical Assistance Program**
**Provider Bulletin**

2005-113

~~Revised~~ PB 2002-65

November, 2003

~~September 2005~~

TO:        All Medicaid Providers
SUBJECT:   The Definition of and the Determination of Medical Necessity for
           Durable Medical Equipment (DME)

DATE:   This bulletin supercedes PB 2002-65

It has come to the Department's attention that there may be a need for clarification about the process that the Department uses to make benefit coverage determinations for Durable Medical Equipment (DME), particularly in light of the 1999 settlement agreement in <u>DeSario v. Thomas.</u> In this settlement, the Department agreed to provide individual consideration for items not listed on the Department's fee schedule and put forth this policy in §17b-262-672 through 17b-262-682 of the Regulations of Connecticut State Agencies, "Requirements for Payment of Durable Medical Equipment". This bulletin clarifies the process that the Department employs in making decisions on coverage pursuant to these regulations.

Requests for individual consideration must: 1) meet the definition of DME, and 2) be medically necessary and medically appropriate. For prior authorization requests for items already on the Department's fee schedule, only medical necessity/medical appropriateness is at issue

**Definition**

The first step in the process is to determine whether the item in question meets all of the criteria in the definition of DME as adopted in § 17b-262-673, of the Regulations of Connecticut State Agencies. These state that the item in question must:

1. Withstand repeated use;
2. Be primarily and customarily used to serve a medical purpose;
3. Be generally not useful to a person in the absence of illness or injury; and
4. Be non-disposable

The definition adopted by the Department is identical to that employed by the federal Centers for Medicare and Medicaid Services (CMS) in the administration of the Medicare program. The Department recognizes, however, that one of the purposes of the Medicaid program is to enable each state, ~~in accordance with all applicable statutory and regulatory requirements~~, to furnish rehabilitation and other services to help eligible families and individuals attain or retain capability for independence or self-care.

CMS has further elaborated on this definition as it applies to specific items in the DMERC manual (Durable Medical Equipment Regional Carrier manual-Region A). This manual is

updated on a regular basis and is universally recognized as a health care industry standard as an aid for the identification of the clinical uses of DME.

While the Utilization Review (UR) staff at DSS does consult the DMERC manual, it is not the only tool that they employ in considering whether a requested item does, in fact, meet the definition of DME. If the item does not appear on the Department's fee schedule and it also is not listed as a covered item in the DMERC manual, staff shall look to other sources of information concerning the requested item. For example, they may request additional documentation from the prescribing practitioner, or they may consult with physicians at the University of Connecticut Health Center under the terms of a Memorandum of Understanding. Under this agreement, the Department may access faculty in the full range of medical specialties to assist in the determination of medical benefits. The staff must then arrive at their own conclusion as to whether the requested item meets the criteria specified in the regulation in order to be considered DME. This would include consideration of any documentation provided to the Department about the particular item requested. Every item shall be individually assessed as to whether it meets the Department's definition of DME. Items are not denied solely because they are in a particular category.

## Medically Necessary/Medically Appropriate

If an item has been determined to meet the definition for DME, the second question is whether that particular item is medically necessary and medically appropriate for a particular Medicaid recipient. In making these decisions, the Utilization Review staff at DSS must evaluate the request for a particular item in light of the Department's definitions of medical necessity and medically appropriate. Both assessments must be based on an individualized assessment of the recipient and his or her medical condition, including documentation from the recipient's doctor and other providers and may include communication with the recipient.

In Section 17b-262-673 of the regulations of Connecticut State Agencies, the Department defines "medical necessity" as:

> "Health care provided to correct or diminish the adverse effects of a medical condition or mental illness; to assist an individual in attaining or maintaining an optimal level of health, to diagnose a condition or prevent a medical condition from occurring."

In the same section, the Department defines "medically appropriate" as:

> "Health care that is provided in a timely manner and meets professionally recognized standards of acceptable medical care; is delivered in the appropriate medical setting; and is the least costly of multiple, equally-effective alternative treatments or diagnostic modalities."

The definitions of "medical necessity" and "medically appropriate" must be applied to each individual once it has been determined that the item requested meets the definition of DME. An item could qualify as DME but it may or may not be medically necessary for a given individual. It may be medically necessary for that individual, but it may or may not be medically appropriate depending on whether the UR staff determine, among other things, that the item is "the least costly of multiple, equally-effective alternative treatments or diagnostic modalities."

While the DMERC Manual provides broad guidance for which items meet the definition of DME and when such items can be determined to be medically necessary and/or medically appropriate for an individual client, it is never the sole basis for denial of a request for coverage. It is a reference point, but it is just that. Additional documentation is received, as described above, and the ultimate determination is based on the criteria specified in the Department's regulations, §17b-262-672 through 17b-262-682.

I hope that this bulletin has provided some clarification about the range of activities that we are engaged in to assure that every request for DME receives a comprehensive review for our clients. If you have any questions, please email your questions to Linda Mead at  *Mark Shaeffer*
linda.mead@po.state.ct.us or Evelyn Sebastian at evelyn.sebastian@po.state.ct.us

                              David Parrella, Director
                              Medical Care Administration

---

This bulletin and other program information can be found at www.ctmedicalprogram.com. Questions regarding this bulletin may be directed to the EDS Provider Assistance Center - Monday through Friday from 8:30 a.m. to 5:00 p.m. at:

| | |
|---|---|
| In-state toll free............................ **800-842-8440** or | EDS |
| Out-of-state or in the | PO Box 2991 |
| local New Britain, CT area ....... **860-832-9259** | Hartford, CT 06104 |

**EDS**

# STATE OF CONNECTICUT
## DEPARTMENT OF SOCIAL SERVICES
25 Sigourney Street Hartford, Connecticut 06106-5033

### MEDICAL SERVICES - NOTICE OF DENIAL

Case _____        Date of Service/Request: _____
Address: _____         Case Number: _____
_____
_____

The prior authorization request submitted to the Connecticut Department of Social Services, Division of Health Care Financing, 25 Sigourney Street, Hartford, CT 06106, by

_____
(Provider)

for _____
         (Durable Medical Equipment)

has been denied by this Department, pursuant to 17b-262-672 to 17b-262-682, inclusive, of the Regulations of Connecticut State Agencies, because:

Per section 17b-262-673(17) medical necessity has not been fully established. Medical necessity for this type of Durable Medical Equipment is clearly established with the exception of _____. In order to approve your request, we must have documentation of medical justification that supports the total product(s) requested. If you submit your request again, your provider should make such documentation available.

As a reminder, you continue to have the right to exercise your freedom of choice in selecting your Durable Medical Equipment provider. You can ask the current provider or another provider to submit a new request that addresses the problem(s) identified on the original request as described in this notice.

The cited regulation(s) may be available at public libraries and is also available on the Department's website at www.ctmedicalprogram.com. You have the right to review your file and all documents the Department relied upon in taking this action.

If you are not satisfied with the action taken, you have the right to appeal and request an Administrative Hearing **_within 60 days from the date of this notice_**. A request for an Administrative Hearing must be made in writing, and addressed to the State of Connecticut, Department of Social Services, Administrative Hearings and Appeals, 25 Sigourney Street, Hartford, CT 06106-5033.

_____        _____
Signature                                         Date

**PLEASE SEE THE NEXT PAGE FOR MORE INFORMATION ON YOUR HEARING RIGHTS**

**THIS INFORMATION IS AVAILABLE IN ALTERNATE FORMATS. PHONE (860) 424-5016 OR TDD/TTY (800) 842-4524.**

If you have additional questions, please contact your worker.

The Administrative Hearing at the Department is your chance to explain why you disagree with the Department's decision. You must be at the hearing.

At the hearing you can speak for yourself or have a friend or relative speak for you. You can also have an attorney represent you. Free legal help may be available from your local Legal Services office.

For information on legal services call 1-800-453-3320.

W-407
(Rev.10/98)

**ESTADO DE CONNECTICUT**
DEPARTMENTO DE SERVICIOS SOCIALES
25 Sigourney Street Hartford, Connecticut 06106-5033

### SERVICIOS MÉDICOS - NOTIFICACION DE DENEGACIÓN

Nombre del caso: _____     Fecha de Servidio/Petición: _____
     Direccion: _____          Numero del caso: _____
          _____
          _____

La solicitud de autorización previa presentada al Departmento de Servicios Sociales, División de Financiamiento de Cuidado de Salud, 25 Sigourney Street, Hartford, CT 06106 por

_____
(Proveedor(a))

para _____
(Equipo Médico Durable)

ha sido denegada por este Departamento en Cumplimiento de la Sección 17b-262-672 a 17b-262-682, inclusive, de las Regulaciones de las Agencias Estatales de Connecticut porque: Según sección 17b-262-673(17) la necesidad médica no se ha establecido completamente. La necesidad médica de este tipo de Equipo Médico Duradero está claramente establecida con excepción de _____. Para poder aprobar su solicitud, tenemos que recibir documentación de la justificación médica que respalde el total del (los) producto(s) solicitado(s). Si usted vuelve a presentar su solicitud, su proveedor deberá poner a la disposición dichos documentos.

Como recordatorio, usted continúa teniendo derecho a ejercer su libertad de elección para seleccionar su proveedor de Equipo Médico Duradero. Usted puede pedirle a su proveedor actual o a otro proveedor que presente una nueva solicitud que mencione el (los) problema(s) identificado(s) en la solicitud original como lo describe este aviso.

La(s) regulacion(es) citida(s) pueda que se encuentre(n) en bibliotecas públicas y también esta(n) disponible en el website del Departamento en www.ctmedicalprogram.com. Usted tiene el derecho a revisar su archivo y todos los documentos que el Departmento utilizo en tomar esta acción.

Si usted no está satisfecho con los pasos tomados, usted tiene derecho a apelar y solicitar una Audiencia Administrativa *a dentro de 60 días de la fecha de este aviso*. La solicitud de una Audiencia Administrativa debe hacerse por escrito y dirigida a Audiencias Administrativa y Apelaciones, Departamento de Servicios Sociales del estado de Connecticut, 25 Sigourney Street, Hartford, CT 06106-5033

_____     _____
         Firma                    Fecha

**VEA EL DORSO PARA ENTERARSE DE SUS DERECHOS A UNA AUDIENCIA.**

(ESTA INFORMACIÓN ESTÁ DISPONIBLE EN FORMATOS ALTERNOS, TELÉFONO (860) 424-5016 O TDD/TYY (800) 842-4524.)

Si tiene preguntas adicionales, por favor comuníquese con su trabajador.

# SU DERECHO A UNA AUDIENCIA ADMINISTRATIVA

La Audiencia Administrativa con el Departmento es su oportunidad para explicar porque usted no esta de acuerdo con la decision del Departmento. Usted tiene que asistir a la audiencia.

En la audiencia usted puede hablar por usted mismo o puede traer otra persona, tal como un amigo o un pariente, para hablar por usted. Usted puede tener también a un abogado que lo represente. Ayuda legal gratis puede que sea disponible de su oficina local de Servicios Legales.

Para información sobre servicios legales llame al 1-800-453-3320.